# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 06-764V

* * * * * * * * * * * * * * * * * * * * * * * *
NATALIA GLASER, *parent of*
M.G., *a minor*,

        Petitioner,

v.

SECRETARY OF HEALTH AND
HUMAN SERVICES,

        Respondent.

* * * * * * * * * * * * * * * * * * * * * * * *

Filed: July 27, 2015

Decision by Stipulation; Damages;
Diphtheria-Tetanus-acellular
Pertussis ("DTaP"); Encephalopathy;
Neurological Injuries

*Paul S. Dannenberg*, Huntington, VT, for Petitioner.

*Glenn A. MacLeod*, U.S. Dep't of Justice, Washington, DC, for Respondent.

## DECISION AWARDING DAMAGES[1]

On November 13, 2006, Natalia Glaser filed a petition, on behalf of her son, M.G., seeking compensation under the National Vaccine Injury Compensation Program (the "Vaccine Program").[2] Petitioner alleges that M.G. developed encephalopathy and other neurological injuries as a result of the Diphtheria-Tetanus-acellular Pertussis ("DTaP") vaccine that he received on or about December 1, 2003. Further, Petitioner alleges that the residual effects of this injury lasted for more than six months.

---

[1] Because this decision contains a reasoned explanation for my actions in this case, I will post it on the United States Court of Federal Claims website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (Dec. 17, 2002) (current version at 44 U.S.C. § 3501 (2014)). As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the published decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole decision will be available to the public. *Id.*

[2] The National Vaccine Injury Compensation Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. § 300aa-10 through 34 (2012)).

Respondent denies that the DTaP vaccine caused M.G.'s encephalopathy or any other injury and further denies that his current disabilities are a sequela of a vaccine-related injury. Nonetheless both parties, while maintaining their above-stated positions, agreed in a stipulation (filed July 27, 2015) that the issues before them could be settled, and that a decision should be entered awarding Petitioner compensation.

I have reviewed the file, and based upon that review, I conclude that the parties' stipulation (as attached hereto) is reasonable. I therefore adopt it as my decision in awarding damages on the terms set forth therein.

The stipulation awards:

- A lump sum of $622,061.54, which represents compensation for first year life care expenses ($164,971.74) and trust seed funds ($457,090.00), in the form of a check payable to Counsel Trust, as trustee of the grantor revisionary trust established for the benefit of M.G.;

- A lump sum of $533,452.33, which amount represents compensation for partial lost future earnings ($408,452.33) and pain and suffering ($125,000.00), in the form of a check payable to Petitioner as guardian(s)/conservator(s) of the estate of M.G. for the benefit of M.G. No payment shall be made until Petitioner provides Respondent with documentation establishing that she has been appointed as the guardian(s)/conservator(s) of M.G.'s estate;

- A lump sum of $26,459.50, which amount represents compensation for past unreimbursable expenses, in the form of a check payable to Petitioner, Natalia Glaser;

- A lump sum of $22,002.61, which amount represents reimbursement of a lien for services rendered on behalf of M.G., in the form of a check payable jointly to Petitioner and

    Department of Health Care Services
    Recovery Branch – MS 4720
    P.O. Box 997421
    Sacramento, CA 95899-7421
    Attn: Class Action Unit
    DHCS Account No: C91900546E-VAC03

- An amount sufficient to purchase the annuity contract described in paragraph 10 of the

2

> attached stipulation, paid to the life insurance company from which the annuity will be purchased.

Stipulation ¶ 8. This amount represents compensation for all damages that would be available under Section 15(a) of the Act.

I approve a Vaccine Program award in the requested amounts set forth above to be made to Petitioner. In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[3]

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Special Master

---

[3] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by each filing (either jointly or separately) a notice renouncing their right to seek review.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
OFFICE OF SPECIAL MASTERS

| | |
|---|---|
| NATALIA GLASER, parent of M.G., a minor,<br><br>Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>Respondent | No. 06-764V<br>Special Master Brian H. Corcoran |

## STIPULATION

The parties hereby stipulate to the following matters:

1. On behalf of her son, M.G., petitioner filed a petition for vaccine compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10 to 34 (the "Vaccine Program"). The petition seeks compensation for injuries allegedly related to M.G.'s receipt of the Diphtheria-Tetanus-acellular Pertussis (DTaP) vaccine, which vaccine is contained in the Vaccine Injury Table (the "Table"), 42 C.F.R. § 100.3(a).

2. M.G. received his immunization on or about December 1, 2003.

3. The vaccine was administered within the United States.

4. Petitioner alleges that M.G. developed encephalopathy and other neurological injuries as a result of his immunization and that he experienced residual effects of this injury for more than six months.

5. Petitioner represents that there has been no prior award or settlement of a civil action for damages on behalf of M.G. as a result of his condition.

6. Respondent denies that the DTaP vaccine caused M.G.'s encephalopathy or any other

injury and further denies that his current disabilities are a sequela of a vaccine-related injury.

7. Maintaining their above-stated positions, the parties nevertheless now agree that the issues between them shall be settled and that a decision should be entered awarding the compensation described in paragraph 8 of this Stipulation.

8. As soon as practicable after an entry of judgment reflecting a decision consistent with the terms of this Stipulation, and after petitioner has filed an election to receive compensation pursuant to 42 U.S.C. § 300aa-21(a)(1), the Secretary of Health and Human Services will issue the following vaccine compensation payments:

    a. A lump sum of $622,061.54, which amount represents compensation for first year life care expenses ($164,971.74) and trust seed funds ($457,090.00), in the form of a check payable to Counsel Trust, as trustee of the grantor reversionary trust established for the benefit of M.G.;

    b. A lump sum of $533,452.33, which amount represents compensation for partial lost future earnings ($408,452.33) and pain and suffering ($125,000.00), in the form of a check payable to petitioner as guardian(s)/conservator(s) of the estate of M.G. for the benefit of M.G..  No payments shall be made until petitioner provides respondent with documentation establishing that she has been appointed as the guardian(s)/conservator(s) of M.G.'s estate;

    c. A lump sum of $26,459.50, which amount represents compensation for past unreimbursable expenses, in the form of a check payable to petitioner, Natalia Glaser;

    d. A lump sum of $22,002.61, which amount represents reimbursement of a lien for services rendered on behalf of M.G., in the form of a check payable jointly to petitioner and

        Department of Health Care Services
        Recovery Branch – MS 4720
        P.O. Box 997421
        Sacramento, CA 95899-7421
        Attn: Class Action Unit
        DHCS Account No: C91900546E-VAC03

    e. An amount sufficient to purchase the annuity contract described in paragraph 10 below, paid to the life insurance company from which the annuity will be purchased (the "Life Insurance Company").

9. The Life Insurance Company must have a minimum of $250,000,000 capital and surplus, exclusive of any mandatory security valuation reserve. The Life Insurance Company must have one of the following ratings from two of the following rating organizations:

   a. A.M. Best Company: A++, A+, A+g, A+p, A+r, or A+s;

   b. Moody's Investor Service Claims Paying Rating: Aa3, Aa2, Aa1, or Aaa;

   c. Standard and Poor's Corporation Insurer Claims-Paying Ability Rating: AA-, AA, AA+, or AAA;

   d. Fitch Credit Rating Company, Insurance Company Claims Paying Ability Rating: AA-, AA, AA+, or AAA.

10. The Secretary of Health and Human Services agrees to purchase an annuity contract from the Life Insurance Company for the benefit of M.G., pursuant to which the Life Insurance Company will agree to make payments periodically to the trustee for the following items of compensation:

   a. For future unreimbursable ACA Premium and Maximum-Out-of-Pocket expenses, beginning on the first anniversary of the date of judgment, an annual amount of $6,474.88 to be paid up to the anniversary of the date of judgment in year 2024. Then, beginning on the anniversary of the date of judgment in year 2024, an annual amount of $7,897.48 to be paid up to the anniversary of the date of judgment in year 2028. Then, on the anniversary of the date of judgment in year 2028, a lump sum of $7,913.08. Then, on the anniversary of the date of judgment in year 2029, a lump sum of $7,991.08. Then, on the anniversary of the date of judgment in year 2030, a lump sum of $8,084.56. Then, on the anniversary of the date of judgment in year 2031, a lump sum of $8,236.60. Then, on the anniversary of the date of judgment in year 2032, a lump sum of $8,361.28. Then, on the anniversary of the date of judgment in year 2033, a lump sum of $8,423.68. Then, on the anniversary of the date of judgment in year 2034, a lump sum of $8,517.16. Then, on the anniversary of the date of judgment in year 2035, a lump sum of $8,610.76. Then, on the anniversary of the date of judgment in year 2036, a lump sum of $8,669.20. Then, on the anniversary of the date of judgment in year 2037, a lump sum of $8,731.60, all amounts increasing at the rate of five percent (5%), compounded annually from the date of judgment.

   b. For future unreimbursable Medicare Part B Premium and Medication expenses, beginning on the anniversary of the date of judgment in year 2038, an annual amount of $1,358.80 to be paid for the remainder of M.G.'s life, increasing at the rate of five

  percent (5%), compounded annually from the date of judgment.

 c. For future unreimbursable Medicare Supplemental Plan expenses, beginning on the anniversary of the date of judgment in year 2038, an annual amount of $4,844.16 to be paid up to the anniversary of the date of judgment in year 2069. Thereafter, beginning on the anniversary of the date of judgment in year 2069, an annual amount of $2,016.00 to be paid for the remainder of M.G.'s life, all amounts increasing at the rate of five percent (5%), compounded annually from the date of judgment.

 d. For future unreimbursable School Day and Non-School Day Attendant Care and Respite Care expenses, beginning on the first anniversary of the date of judgment, an annual amount of $48,242.66 to be paid up to the anniversary of the date of judgment in year 2026, increasing at the rate of three percent (3%), compounded annually from the date of judgment.

 e. For future unreimbursable Attendant Care and Respite Care expenses, beginning on the anniversary of the date of judgment in year 2026, an annual amount of $77,341.46 to be paid up to the anniversary of the date of judgment in year 2034, increasing at the rate of three percent (3%), compounded annually from the date of judgment.

 f. For future unreimbursable Supportive Living expenses, beginning on the anniversary of the date of judgment in year 2044, an annual amount of $45,209.00 to be paid for the remainder of M.G.'s life, increasing at the rate of three percent (3%), compounded annually from the date of judgment.

 g. For future unreimbursable Transportation expenses, beginning on the anniversary of the date of judgment in year 2034, an annual amount of $2,500.00 to be paid for the remainder of M.G.'s life, amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

 h. For future unreimbursable Case Management expenses, beginning on the first anniversary of the date of judgment, an annual amount of $2,640.00 to be paid up to the anniversary of the date of judgment in year 2019. Then, beginning on the anniversary of the date of judgment in year 2019, an annual amount of $1,320.00 to be paid up to the anniversary of the date of judgment in year 2035. Thereafter, beginning on the anniversary of the date of judgment in year 2035, an annual amount of $880.00 to be paid for the remainder of M.G.'s life, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

 i. For future unreimbursable Occupational Therapy Evaluation, Physical Therapy Evaluation, Augmentative Communication Evaluation and Therapy expenses, beginning on the anniversary of the date of judgment in year 2026, an annual amount of $180.00 to be paid up to the anniversary of the date of judgment in year 2038. Then, on the anniversary of the date of judgment in year 2038, a lump sum of $480.00. Thereafter, beginning on the anniversary of the date of judgment in year 2039, an annual amount of $330.00 to be paid for the remainder of M.G.'s life, all

amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

j. For future unreimbursable Educational Advocate, Tutoring, and Behaviorist expenses, beginning on the first anniversary of the date of judgment, an annual amount of $2,300.00 to be paid up to the anniversary of the date of judgment in year 2018. Then, beginning on the anniversary of the date of judgment in year 2018, an annual amount of $3,100.00 to be paid up to the anniversary of the date of judgment in year 2021. Then, beginning on the anniversary of the date of judgment in year 2021, an annual amount of $900.00 to be paid up to the anniversary of the date of judgment in year 2026, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

k. For future unreimbursable Battery, Wheelchair Maintenance, and Upper Extremity Aid expenses, beginning on the first anniversary of the date of judgment, an annual amount of $460.00 to be paid up to the anniversary of the date of judgment in year 2038. Thereafter, beginning on the anniversary of the date of judgment in year 2038, an annual amount of $300.00 to be paid for the remainder of M.G.'s life, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

l. For future unreimbursable Back-up Manual Wheelchair expenses, on the anniversary of the date of judgment in year 2022, a lump sum of $500.00. Then, on the anniversary of the date of judgment in year 2029, a lump sum of $500.00. Then, on the anniversary of the date of judgment in year 2036, a lump sum of $500.00. Thereafter, beginning on the anniversary of the date of judgment in year 2037, an annual amount of $71.43 to be paid for the remainder of M.G.'s life, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

m. For future unreimbursable Augmentative Communication Device/iPad expenses, on the anniversary of the date of judgment in year 2020, a lump sum of $500.00. Then, on the anniversary of the date of judgment in year 2025, a lump sum of $500.00, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

n. For future unreimbursable Shower Chair and Hand Held Shower expenses, on the anniversary of the date of judgment in year 2019, a lump sum of $1,054.00. Then, on the anniversary of the date of judgment in year 2024, a lump sum of $1,054.00. Then, on the anniversary of the date of judgment in year 2029, a lump sum of $1,054.00, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

o. For future unreimbursable Driving Assessment expenses, on the anniversary of the date of judgment in year 2021, a lump sum of $1,476.00, increasing at the rate of three percent (3%), compounded annually from the date of judgment.


p. For future unreimbursable Van Modification expenses, on the anniversary of the date of judgment in year 2025, a lump sum of $15,000.00, increasing at the rate of three percent (3%), compounded annually from the date of judgment.

At the sole discretion of the Secretary of Health and Human Services, the periodic payments may be provided to the trustee in monthly, quarterly, annual or other installments. The "annual amounts" set forth above describe only the total yearly sum to be paid to the trustee and do not require that the payment be made in one annual installment. The trustee will continue to receive the annuity payments from the Life Insurance Company only so long as M.G. is alive at the time that a particular payment is due. Written notice to the Secretary of Health and Human Services, the trustee, and the Life Insurance Company shall be provided within twenty (20) days of M.G.'s death.

11. The annuity contract will be owned solely and exclusively by the Secretary of Health and Human Services and will be purchased as soon as practicable following the entry of a judgment in conformity with this Stipulation. The parties stipulate and agree that the Secretary of Health and Human Services and the United States of America are not responsible for the payment of any sums other than the amounts set forth in paragraph 8 herein and the amounts awarded pursuant to paragraph 12 herein, and that they do not guarantee or insure any of the future annuity payments. Upon the purchase of the annuity contract, the Secretary of Health and Human Services and the United States of America are released from any and all obligations with respect to future annuity payments.

12. As soon as practicable after the entry of judgment on entitlement in this case, and after petitioner has filed both a proper and timely election to receive compensation pursuant to 42 U.S.C. § 300aa-21(a)(1), and an application, the parties will submit to further proceedings

before the special master to award reasonable attorneys' fees and costs incurred in proceeding upon this petition.

13. Petitioner and her attorney represent that they have identified to respondent all known sources of payment for items or services for which the Program is not primarily liable under 42 U.S.C. § 300aa-15(g), including State compensation programs, insurance policies, Federal or State health benefits programs (other than Title XIX of the Social Security Act (42 U.S.C. § 1396 et seq.)), or entities that provide health services on a pre-paid basis.

14. Payments made pursuant to paragraph 8 and any amounts awarded pursuant to paragraph 12 of this Stipulation will be made in accordance with 42 U.S.C. § 300aa-15(i), subject to the availability of sufficient statutory funds.

15. The parties and their attorneys further agree and stipulate that, except for any award for attorneys' fees, and litigation costs, and past unreimbursable expenses, the money provided pursuant to this Stipulation either immediately or as part of the annuity contract, will be used solely for the benefit of M.G., as contemplated by a strict construction of 42 U.S.C. §300aa-15(a) and (d), and subject to the conditions of 42 U.S.C. § 300aa-15(g) and (h).

16. Petitioner represents that she presently is, or within 90 days of the date of judgment will become, duly authorized to serve as guardian(s)/conservator(s) of M.G.'s estate under the laws of the State of California. No payments pursuant to this Stipulation shall be made until petitioner provides the Secretary with documentation establishing her appointment as guardian(s)/conservator(s) of M.G.'s estate. If petitioner is not authorized by a court of competent jurisdiction to serve as guardian(s)/conservator(s) of the estate of M.G. at the time a payment pursuant to this Stipulation is to be made, any such payment shall be paid to the party or parties appointed by a court of competent jurisdiction to serve as guardian(s)/ conservator(s) of

the estate of M.G. upon submission of written documentation of such appointment to the Secretary.

17. In return for the payments described in paragraphs 8 and 12, petitioner, in her individual capacity and as legal representative of M.G., on behalf of herself, M.G., and his heirs, executors, administrators, successors or assigns, does forever irrevocably and unconditionally release, acquit and discharge the United States and the Secretary of Health and Human Services from any and all actions or causes of action (including agreements, judgments, claims, damages, loss of services, expenses and all demands of whatever kind or nature) that have been brought, could have been brought, or could be timely brought in the Court of Federal Claims, under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10 et seq., on account of, or in any way growing out of, any and all known or unknown, suspected or unsuspected personal injuries to or death of M.G. resulting from, or alleged to have resulted from the DTaP vaccination administered on or about December 1, 2003, as alleged by petitioner in a petition for vaccine compensation filed on or about November 13, 2006, in the United States Court of Federal Claims as petition No. 06-764V.

18. If M.G. should die prior to entry of judgment, this agreement shall be voidable upon proper notice to the Court on behalf of either or both of the parties.

19. If the special master fails to issue a decision in complete conformity with the terms of this Stipulation or if the Court of Federal Claims fails to enter judgment in conformity with a decision that is in complete conformity with the terms of this Stipulation, then the parties' settlement and this Stipulation shall be voidable at the sole discretion of either party.

20. This Stipulation expresses a full and complete negotiated settlement of liability and damages claimed under the National Childhood Vaccine Injury Act of 1986, as amended, except

as otherwise noted in paragraph 12 above. There is absolutely no agreement on the part of the parties hereto to make any payment or to do any act or thing other than is herein expressly stated and clearly agreed to. The parties further agree and understand that the award described in this Stipulation may reflect a compromise of the parties' respective positions as to liability and/or amount of damages, and further, that a change in the nature of the injury or condition or in the items of compensation sought, is not grounds to modify or revise this agreement.

21. Petitioner hereby authorize respondent to disclose documents filed by petitioner in this case consistent with the Privacy Act and the routine uses described in the National Vaccine Injury Compensation Program System of Records, No. 09-15-0056.

22. This Stipulation shall not be construed as an admission by the United States or the Secretary of Health and Human Services that the DTaP vaccine caused M.G.'s encephalopathy, or any other injury or any of his current disabilities.

23. All rights and obligations of petitioner hereunder shall apply equally to petitioner's heirs, executors, administrators, successors, and/or assigns as legal representatives of M.G.

END OF STIPULATION

Respectfully submitted,

PETITIONER:

*[signature]*

NATALIA GLASER

ATTORNEY OF RECORD FOR
PETITIONER:

*[signature]*

PAUL S. DANNENBERG, ESQ.
Attorney at Law
325 Delfrate Road
Huntington, VT 05462
Tel: (802) 434-3901

AUTHORIZED REPRESENTATIVE
OF THE ATTORNEY GENERAL:

*[signature]*

VINCENT J. MATANOSKI
Deputy Director
Torts Branch
Civil Division
U.S. Department of Justice
P.O. Box 146
Benjamin Franklin Station
Washington, DC 20044-0146

AUTHORIZED REPRESENTATIVE
OF THE SECRETARY OF HEALTH
AND HUMAN SERVICES:

*[signature]*

A. MELISSA HOUSTON M.D., M.P.H., FAAP
Director, Division of Injury Compensation
Programs
Healthcare Systems Bureau
U.S. Department of Health
and Human Services
5600 Fishers Lane
Parklawn Building, Mail Stop 11C-26
Rockville, MD 20857

ATTORNEY OF RECORD FOR
RESPONDENT:

*[signature]*

GLENN A. MACLEOD
Senior Trial Counsel
Torts Branch
Civil Division
U.S. Department of Justice
P.O. Box 146
Benjamin Franklin Station
Washington, DC 20044-0146
Tel: (202) 616-4122

Dated: 7/27/15